No. 87,895

In the Matter of BYRON J. MOORE, *Respondent*.

(41 P.3d 831)

Opinion filed March 8, 2002.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*G. Craig Robinson*, of Wichita, argued the cause, and *Byron J. Moore*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the Disciplinary Administrator against respondent Byron J. Moore, of Wichita, an attorney admitted to the practice of law in the state of Kansas.

The formal complaint filed against the respondent alleges violations of KRPC 1.3 (2001 Kan. Ct. R. Annot. 323) (diligence and promptness); KRPC 1.4 (2001 Kan. Ct. R. Annot. 334) (communication); KRPC 1.15 (2001 Kan. Ct. R. Annot. 376) (safekeeping property); KRPC 1.16 (2001 Kan. Ct. R. Annot. 387) (terminating representation); and KRPC 8.4 (2001 Kan. Ct. R. Annot. 437) (misconduct).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys on July 17, 2001, in the hearing room of the Disciplinary Administrator. The office of the Disciplinary Administrator appeared by its administrator, Stanton A. Hazlett. The respondent appeared in person pro se.

The answer filed by the respondent admitted the majority of the allegations of the formal complaint. Exhibits were admitted and the Disciplinary Administrator called Bobbi Foss, Wallace R. Johnson, and the respondent to testify as to the merits of the complaint as well as to factors in aggravation and mitigation. After hearing the arguments of counsel, reviewing the exhibits admitted into evidence, and considering the evidence, the panel found by clear and convincing evidence the following:

## "FINDINGS OF FACT

"1.    Byron J. Moore (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 08175. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Wichita, Kansas . . . Although the Respondent was admitted to the practice of law in 1973, he did not actively practice law until 1996.

"2.    On March 2, 1999, the Respondent entered the professional visitation area of the Sedgwick County Adult Detention Facility to meet with Pamela F. Dirks. The Respondent represented to the jail personnel that Ms. Dirks was a client of his, although he was not entered as attorney of record in any pending case at that time. While the Respondent was meeting with Ms. Dirks, a Sedgwick County Deputy checked the visitation room. At that time, the deputy observed that the top part of Ms. Dirks jumpsuit was raised, that the bottom part of her jumpsuit was lowered, and that Ms. Dirks was masturbating. Additionally, the deputy saw that the Respondent was watching Ms. Dirks masturbate.

"3.    On April 29, 1999, the Respondent was charged in a two count complaint in the Sedgwick County District Court. Count one of the complaint alleged that the Respondent violated K.S.A. 21-3826 (traffic in contraband in a correctional institution), a level 6 nonperson felony. Count two of the complaint alleged that the Respondent violated K.S.A. 21-4301 (promoting obscenity), a class A nonperson misdemeanor.

"4.    At the hearing on this matter, the Respondent testified that during the summer months of 1999, he began regularly using cocaine.

"5.    On November 4, 1999, the Respondent's criminal case went before a jury. The jury found the Respondent not guilty of trafficking contraband in a correctional institution, but guilty of promoting obscenity. The Respondent was sentenced to serve six months in the county jail. The jail sentence was suspended and the Respondent was placed on probation for twenty-four months.

"6.    On December 23, 1999, Wallace R. Johnson retained the Respondent to represent Bobbi Foss on charges of driving after having been declared a habitual violator and driving without liability insurance. The Respondent told Mr. Johnson that his attorney fee for the representation would be $750. At that time, Mr. Johnson paid $500 of the fee.

"7.    On January 25, 2000, immediately prior to Ms. Foss' first appearance on the charges, the Respondent met with Mr. Johnson and Ms. Foss. The Respondent told Mr. Johnson and Ms. Foss that in order to make the appearance with Ms. Foss that day, the remaining $250 had to be paid. Mr. Johnson paid the Respondent $250. The Respondent appeared with Ms. Foss at the first appearance.

"8.    After Ms. Foss' first appearance, Ms. Foss and Mr. Johnson attempted to contact the Respondent on many occasions. The Respondent failed to return the telephone calls. At some point, Ms. Foss ran into the Respondent at a mutual friend's house. The Respondent assured Ms. Foss that he was working on her

case. However, the Respondent's failure to maintain communication with Ms. Foss continued.

"9. After being placed on probation, the Respondent was arrested for driving while his license was suspended, possession of drug paraphernalia, and possession of cocaine. As a result of his arrest, a probation violation warrant was issued. On March 21, 2000, the Respondent was arrested on the probation violation warrant. On that same day, the Respondent began having chest pains. The Respondent was transported to the Wesley Medical Center in Wichita. While at the hospital, a blood test was performed on the Respondent. The blood test indicated that the Respondent had used cocaine.

"10. Because she could not get into contact with the Respondent, shortly before the date set for trial, Ms. Foss contacted the District Court of Sedgwick County. Ms. Foss was informed by a judge that the Respondent was incarcerated, and would be unable to represent her.

'11. At the time of trial, Ms. Foss appeared as ordered. The Respondent did not appear. The Respondent failed to withdraw from the representation of Ms. Foss. The Respondent failed to refund the fee paid by Mr. Johnson.

"12. Ms. Foss obtained new counsel and Mr. Johnson paid the new attorney a retainer of $1,000. Subsequently, Mr. Johnson was reimbursed a portion of the fee paid to the Respondent by the Client Protection Fund.

"13. After having served approximately two and a half months in jail, the Respondent was again placed on probation. At some point, the Respondent requested that his probation be revoked so that he could be placed in jail to complete his sentence. On December 23, 2000, the Respondent was released from jail, after completing the six month jail sentence for his conviction of promoting obscenity.

"14. At the hearing on this matter, the Respondent testified that he has not used cocaine since his arrest on March 21, 2000. However, the Respondent failed to provide any medical evidence to substantiate the treatment received. Additionally, the Respondent testified that he is currently under treatment for depression, but no records were provided to the Disciplinary Administrator's Office or to the Hearing Panel regarding that treatment.

"15. The Respondent testified at the hearing held on his matter that he does not have an office for his law practice. The Respondent is currently living with his son in an apartment in Wichita, Kansas. The Respondent practices law from his son's apartment. The Respondent testified that he has never employed a secretary to assist him in the practice of law. The Respondent maintains communication with his clients by use of a cellular telephone and an answering machine.

## "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1. Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. After the Respondent appeared with Ms.

Foss, the Respondent failed to perform any additional legal services for Ms. Foss. Accordingly, the Respondent failed to act with reasonable diligence and promptness in representing Ms. Foss and, therefore, violated KRPC 1.3.

"2. KRPC 1.4(a) provides:

'A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

*Id.* The Respondent failed to return telephone calls made by Ms. Foss. Because the Respondent failed to even attempt to keep Ms. Foss informed about the status of her case, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"3. KRPC 1.15(b) provides as follows:

'Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

*Id.* In this case, the Respondent violated this subsection by failing to return the unearned fee paid by Mr. Johnson. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.15(b).

"4. KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

*Id.* In this case, the Respondent failed to give reasonable notice to Ms. Foss that the Respondent would no longer be providing representation. Additionally, the Respondent failed to return the unearned fees paid by Mr. Johnson. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.16(d).

"5. KRPC 8.4(g) provides that '[i]t is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' *Id.* The Hearing Panel concludes that the Respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of KRPC 8.4(g), by violating K.S.A. 21-4301, by regularly using cocaine from the summer of 1999 through March, 2000, and by committing multiple additional criminal violations.

## "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide adequate communication and diligent representation. Additionally, the Respondent violated his duty to the public to maintain personal integrity.

"*Mental State.* The Respondent negligently violated his duty to his client to provide adequate communication and diligent representation to his client. The Respondent knowingly and intentionally violated his duty to the public to maintain personal integrity.

"*Injury.* Ms. Foss suffered actual injury by the Respondent's misconduct. Ms. Foss appeared at the time of her trial without counsel, and was forced to endure the anger of the presiding judge. Additionally, Ms. Foss was required to obtain new counsel. Ms. Foss incurred additional attorney fees charged by that counsel. The injury caused by the Respondent's failure to maintain personal integrity is difficult to quantify. But, it is, without doubt, that the profession suffered an injury as a result of the Respondent's criminal violations, both prosecuted and not prosecuted.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Pattern of Misconduct. The Respondent engaged in a pattern of misconduct, according to his own testimony, by repeatedly violating the laws of Kansas. The Respondent testified that he used cocaine regularly over a period of nine or ten months, beginning in summer of 1999 and continuing through his arrest in March, 2000. Repeatedly violating the law establishes a pattern of misconduct.

"Multiple Offenses. By violating KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 1.16, and KRPC 8.4, the Respondent engaged in multiple offenses.

"Vulnerability of Victim. Ms. Foss was charged with one felony crime and one misdemeanor crime. Individuals facing criminal charges are particularly vulnerable to attorney misconduct.

"Indifference to Making Restitution. Although the Respondent testified that he has been financially unable to make restitution in this case, he also testified that he purchased an advertisement in the telephone book for his law practice. As such, the Hearing Panel concludes that the Respondent chose not [to] make restitution.

"Illegal Conduct. The Respondent was convicted by a jury of promoting obscenity, in violation of K.S.A. 21-4301, a class A misdemeanor. Additionally, the

Respondent was convicted of possession of drug paraphernalia. Finally, the Respondent used cocaine on a regular basis from the summer of 1999, through March, 2000.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following factor in mitigation present in this case:

"Absence of Prior Disciplinary Record. The Respondent has not previously been disciplined.

"In addition, the Hearing Panel considered whether chemical dependency, the imposition of other penalties, and remorse were factors in mitigation:

"Chemical Dependency. Chemical dependency is a factor in mitigation in certain circumstances. In order for chemical dependency to be a mitigating factor, there must be (1) medical evidence that the Respondent was affected by a chemical dependency, (2) evidence that the chemical dependence caused the misconduct, (3) evidence that the Respondent's recovery from the chemical dependency is demonstrated by a meaningful and sustained period of successful rehabilitation, and (4) evidence that the recovery arrested the misconduct and recurrence of that misconduct is unlikely. In this case, the Respondent failed to present the evidence necessary to establish that chemical dependency is a factor in mitigation. Accordingly, the Hearing Panel concludes that chemical dependence is not a factor in mitigation.

"Imposition of Other Penalties or Sanctions. The Hearing Panel recognizes that the Respondent served 183 days in jail for his conviction of promoting obscenity. However, the Hearing Panel does not conclude that this, in any way, mitigates the misconduct committed by the Respondent.

"Remorse. The Respondent failed to express any remorse for his misconduct. At one point, the Respondent acknowledged that his criminal acts were 'stupid.' However, the Respondent never apologized for his misconduct nor did he appear to appreciate the damage done to the profession as a whole by his conduct. As such, the Hearing Panel concludes that the remorse is not a factor in mitigation in this case.

"The Hearing Panel also thoroughly examined and considered Standards 4.42(b) and 5.12. Standard 4.42(b) provides:

'Suspension is generally appropriate when a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

*Id.* Standard 5.12 provides:
'Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'
*Id.*

"Based upon the above findings of fact, conclusions of law, and standards, the Hearing Panel unanimously recommends that Respondent be suspended from

the practice of law for a period of two years. Additionally, the Hearing Panel recommends that the Respondent be required to undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219. At the reinstatement hearing, the Respondent should be required to establish that he has received the appropriate treatment to enable him to prevent a repeat of the misconduct present in this case."

Respondent did not take exceptions to the final hearing report which, pursuant to Supreme Court Rule 212(d) (2001 Kan. Ct. R. Annot. 263), is deemed to be admitted. Respondent reserved the right to submit evidence in mitigation of discipline, including evidence of direct causation between respondent's chemical dependency and the complained-of conduct.

Two days prior to the hearing before our court, respondent moved to supplement his response and filed a discharge summary from Positive Adjustments dated April 1, 2001, a statement from Atishwin Institute that he had been a resident of its halfway house from June 21, 2000, until September 4, 2000, a statement of On Guard Court Services that it would handle drug screening of respondent, and a proposed probation plan stating:

"Probation Plan

"1. Monitoring contract with On Guard Court Services for random UAs.
"2. Supervision by practicing attorney in Wichita, Kansas.
"3. Abstention from use of illegal drugs.
"4. Regularly attend CA or NA meeting and report attendance to Disciplinary Administrator of not less than on a quarterly basis.
"5 Attend a minimum of 3 hours of CLE law office management each year."

Respondent appeared before us requesting a lesser sanction because of his abstinence from narcotics since March 2000, stated that his remorse was inartfully stated, suggested he was inexperienced in the practice of law, and requested his probation plan be considered.

The court, having considered the record herein and the report of the hearing panel, concurs in the findings, conclusions, and recommendation of the panel.

The court specifically finds the probation plan submitted is inadequate to protect the public and fails to comply with the internal operating rules of the Kansas Board for Discipline of Attorneys. See *In re Long*, 266 Kan. 664, 667, 972 P.2d 773 (1999).

IT IS THEREFORE ORDERED that Byron J. Moore be suspended from the practice of law in the State of Kansas for a period of 2 years, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2001 Kan. Ct. R. Annot. 224).

IT IS FURTHER ORDERED that in the event respondent should seek reinstatement, he shall be subject to all reinstatement requirements of Supreme Court Rule 219 (2001 Kan. Ct. R. Annot. 285), including establishing that he has received appropriate treatment to enable him to prevent a repeat of the misconduct present in this case.

IT IS FURTHER ORDERED that respondent make restitution to the Kansas Lawyer's Fund for client protection in the sum of $750.

IT IS FURTHER ORDERED that respondent comply with Supreme Court Rule 218 (2001 Kan. Ct. R. Annot. 276), that the costs of these proceedings be assessed to the respondent, and that this opinion be published in the official Kansas Reports.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.